**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DAVID FRANKFURTER, individually and on behalf of those similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>COMMUNITY HEALTH CENTER, INC.,<br><br>*Defendant*. | ) | Case No. 3:25-cv-344-MPS |

| | | |
|---|---|---|
| DONNA PLOSS, individually and on behalf of those similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>COMMUNITY HEALTH CENTER, INC.,<br><br>*Defendant*. | ) | Case No. 3:25-cv-345-MPS |

| | | |
|---|---|---|
| ROBERTO RODRIQUEZ, individually and on behalf of those similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>COMMUNITY HEALTH CENTER, INC.,<br><br>*Defendant*. | ) | Case No. 3:25-cv-358-MPS |

| | | |
|---|---|---|
| MATTHEW TEDONE, individually and on behalf of those similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>COMMUNITY HEALTH CENTER, INC.,<br><br>*Defendant.* | ) | Case No. 3:25-cv-371-MPS |
| CHRISTINE-ANN BROWN, on behalf of herself and minor child A.B., and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>COMMUNITY HEALTH CENTER, INC.,<br><br>*Defendant.* | ) | Case No. 3:25-cv-372-MPS |
| ROSEANNE HORN and CAROLYN PIERCY, individually and on behalf of those similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>COMMUNITY HEALTH CENTER, INC.,<br><br>*Defendant.* | ) | Case No. 3:25-cv-388-MPS |

| | | |
|---|---|---|
| GUSTAVO FLORES TORRES, individually and on behalf of those similarly situated, | ) | |
| | ) | Case No. 3:25-cv-490-MPS |
| *Plaintiff,* | ) | |
| v. | ) | |
| COMMUNITY HEALTH CENTER, INC., | ) | |
| *Defendant.* | ) | |

| | | |
|---|---|---|
| CHRISTOPHER MIMS, | ) | |
| *Plaintiff,* | ) | Case No. 3:25-cv-614-MPS |
| v. | ) | |
| COMMUNITY HEALTH CENTER, INC., | ) | |
| *Defendant.* | ) | |

**DEFENDANT COMMUNITY HEALTH CENTER, INC.'S OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................1
FACTUAL AND LEGAL BACKGROUND ....................................................3
A. CHCI's Deemed Federal Employment and Absolute Immunity ....................3
B. Procedural and Factual Background.........................................................5
ARGUMENT .............................................................................................8
I. Any Procedural Objection to Removal Is Waived If Not Timely Raised by a Party .............................................................................................8
II. CHCI Properly Removed this Action Pursuant to § 233(*l*)(2) ......................10
A. The Secretary irrevocably deemed CHCI to be a PHS employee for the relevant period ......................................................................................10
B. 42 U.S.C. § 233(*l*)(1) obligates the Attorney General to remove actions on behalf of deemed defendants .....................................................................12
C. Section 233(*l*)(2) affords a removal right without a time limit .....................14
III. CHCI Properly Removed This Case Pursuant to 28 U.S.C. § 1442(a)(1) ....16
IV. CHCI Properly Invoked the Court's CAFA Jurisdiction .............................20
A. The Home State Exception Does Not Apply...........................................21
B. Plaintiffs Have Also Failed to Satisfy Their Burden that the Local Controversy Exception Is Applicable.......................................................23
C. The Discretionary Exception Does Not Apply..........................................25
D. Plaintiffs' Request for Jurisdictional Discovery Should be Denied.............26
Conclusion ..............................................................................................27

## TABLE OF AUTHORITIES

### Cases

*Abrego Abrego v. The Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006)............................................................................................ 26

*Adams v. West Marine Prods., Inc.*,
958 F.3d 1216 (9th Cir. 2020)............................................................................................ 23

*Agyin v. Razmzan*,
986 F.3d 168 (2d Cir. 2021)........................................................................................ passim

*Albury v. Daymar Colleges Grp., LLC*,
No. 3:11-CV-573, 2012 WL 524480 (W.D. Ky. Feb. 15, 2012) ............................................ 22

*Bland v. Urology of Greater Atlanta, LLC*,
No. 1:23-cv-132-MLB, 2024 WL 3313348 (N.D. Ga. Mar. 14, 2024) .................................. 22

*Blumberger v. Tilley,*
115 F.4th 1113 (9th Cir. 2024)............................................................................................. 1

*Brook v. UnitedHealth Grp. Inc.,*
No. 06 CV 12954 (GBD), 2007 WL 2827808 (S.D.N.Y. Sept. 27, 2007) ............................. 21

*Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986)............................................................................................ 26

*Celestine v. Mount Vernon Neighborhood Health Ctr.*,
403 F.3d 76 (2d Cir. 2005)............................................................................................... 14

*Cmty. Health Care Ass'n of N.Y. v. Shah*,
770 F.3d 129 (2d Cir. 2014)............................................................................................. 18

*Cohens v. Virginia*,
19 U.S. 264 (1821) ............................................................................................................ 20

*Colo. River Water Conservation Dist. v. U.S.*,
424 U.S. 800 (1976) .......................................................................................................... 20

*Colorado v. Symes*,
286 U.S. 510 (1932) .......................................................................................................... 16

*Cuoco v. Moritsugu*,
222 F.3d 99 (2d Cir. 2000)................................................................................................... 4

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
574 U.S. 81 (2014)................................................................................................... 2, 21, 26

*Davenport v. Lockwood, Andrews & Newnam, Inc.*,
854 F.3d 905 (6th Cir. 2017)........................................................................................ 21

*De Martinez v. Lamagno*,
515 U.S. 417 (1995) ............................................................................................... 3, 14

*Doe v. Centerville Clinics Inc.*,
No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2023)...................................................... 14

*Elasali v. Sun Diego*,
No. 07-cv-02272-W-JMA, 2008 WL 11336731 (S.D. Cal. July 3, 2008).............................. 26

*Farina v. Nokia Inc.*,
625 F.3d 97 (3d Cir. 2010)............................................................................................. 8

*Ford v. Sandhills Med. Found., Inc.*,
97 F.4th 252 (4th Cir. 2024)......................................................................................... 19

*Ford v. Sandhills Med. Found., Inc.*,
No. 21-cv-02307, 2022 WL 1810614 (D.S.C. June 2, 2022).................................................. 19

*Friedenberg v. Lane Cnty.*,
68 F.4th 1113 (9th Cir. 2023)................................................................................... 4, 17

*Fulgenzi v. Smith*,
No. 1:12-CV-1261 RB/RHS, 2014 WL 11497836 (D.N.M. Nov. 13, 2014) .......................... 24

*Gaska v. DARCARS of R.R. Ave., Inc.*,
673 F. Supp. 3d 157 (D. Conn. 2023) ...................................................................... 21, 23

*Hale v. ARcare, Inc.*,
No., 3:22-CV-00117-BSM, 2024 WL 1016361 (E.D. Ark. Mar. 8, 2024)............................. 19

*Hamilton v. Aetna Life and Cas. Co.*,
5 F.3d 642 (2d Cir. 1993)............................................................................................... 8

*In re Allstate Ins.*,
8 F.3d 219 (5th Cir. 1993)............................................................................................ 10

*Int'l House v. Consolidated Edison Co. of N.Y.*,
2023 WL 2898623 (S.D.N.Y. Apr. 11, 2023).................................................................... 23

*Jauregui v. Roadrunner Transportation Servs., Inc.*,
28 F.4th 989 (9th Cir. 2022)........................................................................................... 2

*Jefferson Cnty., Ala. v. Acker*,
527 U.S. 423 (1999) ...................................................................................................... 17

*Kelley v. Richford Health Ctr., Inc.*,
115 F.4th 132 (2d Cir. 2024) ........ 17

*Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*,
346 F.3d 1190 (9th Cir. 2003) ........ 10

*Martinez v. Darden Restaurants, Inc.*,
No. CV 15-3434-GW(GJSX), 2015 WL 4480658 (C.D. Cal. July 22, 2015) ........ 24

*McCracken v. Verisma Sys., Inc.*,
No. 6:14-CV-06248(MAT), 2017 WL 2080279 (W.D.N.Y. May 15, 2017) ........ 25

*Mesa v. California*,
489 U.S. 121, 129 (1989 ........ 20

*Page v. City of Southfield*,
45 F.3d 128 (6th Cir. 1995) ........ 10

*Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*,
485 F.3d 793 (5th Cir. 2007) ........ 22

*Stewart v. Ruston Louisiana Hosp. Co., LLC*,
No. 3:14–0083, 2014 WL 4678606 (W.D. La. Sept. 19, 2014) ........ 22

*The Mayor v. Cooper*,
6 Wall. 247 (1868) ........ 20

*United States v. Fenway Cmty. Health Ctr., Inc.*,
No. 1:23-cv-12361, Dkt. No. 27 (D. Mass. May 13, 2024) ........ 9

*Willingham v. Morgan*,
395 U.S. 402 (1969) ........ 2, 16

**Statutes**

28 U.S.C. § 1332(d) ........ *passim*

28 U.S.C. § 1332(d)(4)(B) ........ 24

28 U.S.C. § 1441 ........ 1

28 U.S.C. § 1442(a)(1) ........ *passim*

28 U.S.C. § 1447(c) ........ 8, 9, 10

42 U.S.C. § 233(a) ........ *passim*

42 U.S.C. § 233(c) ........ *passim*

42 U.S.C. § 233(g) ........ *passim*

42 U.S.C. § 233(g)(1)(A) ........ 3

42 U.S.C. § 233(g)(1)(F) ........ 2, 11, 13

42 U.S.C. § 233(*l*) ........ *passim*

42 U.S.C. § 233(*l*)(1) ........ *passim*

42 U.S.C. § 233(*l*)(2) ........ *passim*

42 U.S.C. § 254b ........ 4, 17, 18, 20

**Regulations**

42 C.F.R. § 51c.110 ........ 18

42 C.F.R. § 51c.303 ........ 18

**Other**

Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, 84 Stat. 1868 (1970) ........ 3

H.R. Rep. No. 104-398 ........ 13

H.R. Rep. 102-823(I) ........ 18

P.L. 104-73, § 9 ........ 4

## INTRODUCTION

Each of the fifteen above-captioned actions is properly before this Court. Defendant Community Health Center, Inc. (CHCI) deemed to be a federal employee by the United States Department of Health and Human Services (HHS) and entitled to absolute immunity from Plaintiffs' claims, timely removed each from state court.[1] This is true notwithstanding the filings from United States Attorney General claiming otherwise, as courts have recognized. *Blumberger v. Tilley,* 115 F.4th 1113, 1135 (9th Cir. 2024).

The remand motions—and the Government's non-party notices[2]—urge the Court to deny CHCI an opportunity to assert its claimed federal immunity. That, however, is precisely what both officer removal statutes under which CHCI removed afford deemed defendants: a "meaningful forum in which to challenge the government's failure to certify scope of employment." *Agyin v. Razmzan*, 986 F.3d 168, 178–79 (2d Cir. 2021).

The Class Action Fairness Act (CAFA) offers an additional basis for jurisdiction in several actions. It provides for "significantly expanded federal jurisdiction in diversity class actions" and "was designed to restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir.

---

[1] CHCI removed all fifteen pursuant to two separate and distinct federal officer removal statutes (42 U.S.C. § 233(*l*) and 28 U.S.C. § 1442(a)(1)) and, where appropriate, CHCI invoked the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d), as an additional ground. CHCI did not invoke CAFA in five *pro se* actions—*Mims*, *Blount*, *Laureano*, *Hardy*, and *Stiggle*—because they were not brought as class actions, and did not invoke CAFA in *Brown* and *Chomicz* because the putative class in each is explicitly limited to citizens of Connecticut.

[2] In *Mims*, the Court directed CHCI to show cause as to "why this case should not be remanded for lack of subject matter jurisdiction, in light of the issues raised by" the Government's notice. No. 3:25-cv-00614, ECF 15. As its response, CHCI submits this opposition memorandum, which addresses the issues raised in the Government's notice.

2022) (quotations omitted). Officer removal statutes and CAFA—unlike the general removal statute, 28 U.S.C. § 1441—are broadly construed *in favor* of a federal forum. *Willingham v. Morgan*, 395 U.S. 402, 406–07 (1969); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014)).

CHCI's deemed federal status—rooted in the Public Health Service (PHS) Act, as amended by the Federally Supported Health Centers Assistance Act (FSHCAA)—provides CHCI and its personnel absolute immunity from any civil action or proceeding resulting from the performance of covered conduct, *i.e.*, "medical . . . or related functions." 42 U.S.C. § 233(a), (g)(1)(A); *Agyin*, 986 F.3d at 178. The "final and binding" federal status, § 233(g)(1)(F), also opens the door to federal court for an adjudication of a deemed defendant's immunity defense. *See Blumberger*, 115 F.4th at 1123, 1134. But more than merely providing access, the statutory provisions at issue obligate the Attorney General to handle the niceties of getting from state to federal court, and to do so promptly—within fifteen days of notice of the state court action—to protect deemed defendants against default judgment and preserve the status quo pending a threshold immunity determination. 42 U.S.C. § 233(*l*)(1); *cf. Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) ("The entitlement is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."). Here, because the Attorney General failed to perform its non-discretionary duty, CHCI removed the matters itself, as contemplated in 42 U.S.C. § 233(*l*)(2).

The notion, advanced in the remand motions, that this Court can do no more than rubberstamp the Attorney General's negative coverage determination is contrary to statutory language, congressional intent, and binding precedent. Having deemed CHCI and its personnel to be federal PHS employees during the year at issue, the United States, now called to make good on

its promise of absolute immunity, should not be permitted to shield its ("scarcely-disinterested") refusal to do so from judicial review. *See De Martinez v. Lamagno*, 515 U.S. 417, 434 (1995); *Blumberger*, 115 F.4th at 1129 ("[I]f one thing about § 233 is plain, it is that Congress did not plainly commit ["the critical scope-of-employment"] inquiry to the unreviewable judgment of the Attorney General.") (citing *De Martinez*, 515 U.S. at 434).

Moreover, Plaintiffs concede that the prerequisites to remove under CAFA were met. Rather, Plaintiffs seek to invoke three exceptions to CAFA: (1) the home state exception; (2) the local controversy exception; and (3) the discretionary exception. Yet Plaintiffs fail to carry their burden of establishing each element of the exceptions by a preponderance of the evidence.

For all of these reasons, and those outlined more fully below, the Court should deny the motions to remand.

## FACTUAL AND LEGAL BACKGROUND

### A. CHCI's Deemed Federal Employment and Absolute Immunity

Pursuant to the Emergency Health Personnel Act of 1970, Pub. L. No. 91-623, 84 Stat. 1868 (1970), *codified at* 42 U.S.C. § 233(a) *et seq*., PHS personnel are absolutely immune from any civil action or proceeding "resulting from the[ir] performance of medical, surgical, dental, or related functions" undertaken within the scope of their federal employment. 42 U.S.C. § 233(a). The statute provides actual and deemed PHS employees a right to be free from the potential liability, cost, and burden of litigation by making the "remedy against the United States" under the Federal Tort Claims Act (FTCA) "exclusive of any other civil action or proceeding" that arises out of their performance of covered conduct. *Id*.

The FSHCAA, as amended in 1995 and codified at 42 U.S.C. § 233(g) *et seq*., authorizes the HHS Secretary to extend that "same" immunity to certain "federally supported health centers"

and their personnel. 42 U.S.C. § 233(g)(1)(A); *Agyin*, 986 F.3d at 178 (recognizing deemed and actual PHS employees receive "from the federal government a delegation of the same legal immunity"). That immunity covers more than traditional medical malpractice claims. *See Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000) ("[T]here is nothing in the language of § 233(a) to support [the] conclusion [that § 233(a) provides immunity only from medical malpractice claims]"); *Friedenberg v. Lane Cnty.*, 68 F.4th 1113, 1128 (9th Cir. 2023) ("Congress did not limit § 233 immunity to 'only' malpractice claims when it could have.") (citing *Cuoco*).

To be deemed a PHS employee, health centers receiving federal funding under 42 U.S.C. § 254b, must apply "in such form and such manner as the Secretary shall prescribe." *Id.* § 233(g)(1)(D). Through the deeming application, HHS assures itself that a health center applicant, among other things, "has implemented appropriate policies and procedures to reduce the risk of malpractice and the risk of lawsuits arising out of any health or health-related functions performed by the entity." *Id.* § 233(h)(1). On receipt of the application, HHS must make a prompt deeming determination, in advance of, and for, the period for which deemed status is sought. *Id.* § 233(g)(1)(E). A favorable determination confers "final and binding" federal status on the health center and its personnel for the calendar year specified in HHS's annual application. *Id.* § 233(g)(1)(D), (F), (g)(4).[3]

On notification of a state court action against any health center grantee (or its employee, officer, board member, or qualifying contractor), the Attorney General must appear in that court

[3] The only exception to this rule (which is inapplicable here) is that the Attorney General may revoke an individual's deemed status if a determination is made, after "a full and fair hearing," that the individual would "expose the Government to an unreasonably high degree of risk of loss." *Id.* § 233(i); *see also* FSHCAA, P.L. 104-73, § 9 (Dec. 26, 1995) (entitling this provision aptly, "Due Process for Loss of Coverage").

within fifteen days to report whether the "Secretary has determined under subsections (g) and (h) of [Section 233], that such [defendant] is deemed to be an employee of the Public Health Service for purposes of this section with respect to the actions or omissions that are the subject of such civil action or proceeding." *Id.* § 233(l)(1); *Blumberger*, 115 F.4th at 1126–27 (requiring Attorney General to report Secretary's "ex ante" deeming determination). The Attorney General's appearance is "deemed to satisfy the provisions of [42 U.S.C. § 233(c)] that the Attorney General certify that an entity was acting within the scope of their employment or responsibility." 42 U.S.C. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1127; *see also id.* at 1134. The report thus requires the Attorney General to remove the case and creates "a rebuttable presumption . . . subject to the Attorney General's further inquiry" that the defendant acted within the scope of their deemed federal employment for the conduct at issue. *Id.* at 1131. "[I]t is an employee's deemed status, not covered status, that triggers the removal provisions of § 233(*l*)(1)." *Id.* Even if the Attorney General advises that a defendant is "deemed" but not "covered" by § 233(a) immunity, "removal is necessary." *Id.* If the Attorney General "fails" to appear and advise the state court as required by § 233(*l*)(1), the deemed PHS employee may remove the matter to the appropriate federal district court, without any time limit for doing so. 42 U.S.C. § 233(*l*)(2); *Blumberger*, 115 F.4th at 1140 (citing § 233(c)). The dispute over whether the Secretary's deeming determination provides coverage—and therefore immunity—for the particular lawsuit is determined in federal court. *See Blumberger*, 115 F.4th at 1134.

### B. Procedural and Factual Background

Between February and April 2025, the named plaintiffs in the above-captioned cases—who are current or former patients of CHCI—filed suits against CHCI in state court, all based on

the same underlying events.[4] Each complaint, at its core, alleges CHCI breached duties to the plaintiffs, arising from their patient-provider relationships, to protect their confidential information—which CHCI collected in the course, and as a condition, of providing care—against loss/unauthorized use and, as a result, a third party gained unauthorized access to/stole that information from CHCI's electronic health record system. *See*, *e.g.*, Notice of Removal, *Frankfurter*, No. 25-344, Ex. A (Complaint), ECF1-1 at ¶¶3, 8, 29–31, 42–43.

CHCI notified HHS of the actions by delivering copies of the complaints to HHS's Office of General Counsel (OGC). *See*, *e.g.*, Notice of Removal, *Frankfurter*, ECF No. 1 at ¶37 (citing CHCI email to HHS OGC). The Attorney General, through a local designee, responded nearly identically in each case, informing the state court that: (1) HHS has advised that CHCI "had been 'deemed' to be an 'employee of the [PHS]" for the relevant period, but that the United States "would not be intervening and substituting itself for CHCI because 'Plaintiffs' Complaint does not arise out of any conduct by [CHCI], for which § 233(a) makes the remedy against the United States

[4] *See Frankfurter v. CHCI*, MMX-CV-25-6044376-S (Conn. Super. Ct. filed Feb. 10, 2025; removed Mar. 10, 2025); *Ploss v. CHCI*, MMX-CV-25-6044375-S (Conn. Super. Ct. filed Feb. 10, 2025; removed Mar. 10, 2025); *Colino v. CHCI*, HBB-CV-25-6093209-S (Conn. Super. Ct. filed Feb. 7, 2025; removed Mar. 14, 2025); *Rodriguez v. CHCI*, NNH-CV-25-6152371-S (Conn. Super. Ct. filed Feb. 7, 2025; removed March 12, 2025); *Tedone v. CHCI*, MMX-CV-25-6044349-S (Conn. Super. Ct. filed Feb. 7, 2025; removed Mar. 14, 2025); *Brown v. CHCI*, MMX-CV-25-6044346-S (Conn. Super. Ct. filed Feb. 6, 2025; *Horn v. CHCI*, MMX-CV25-6044523-S (Conn. Super. Ct. filed Feb. 26, 2025; removed Mar. 17, 2025); *Flores Torres v. CHCI*, MMX-CV25-6044546-S (Conn. Super. Ct. filed Mar. 3, 2025; removed Mar. 26, 2025); *Dallape v. CHCI*, FST-CV25-6072023-S (Conn. Super. Ct. filed Mar. 3, 2025; removed Mar. 31, 2025); *Chomicz v. CHCI*, 3:25-cv-586-MPS (Conn. Super. Ct. served Mar. 14, 2025; removed Apr. 14, 2025); *Mims v. CHCI*, KNL-CV25-5025937-S (Conn. Super. Ct. filed Mar. 24, 2025; removed Apr. 17, 2025); *Blount v. CHCI*, KNL-CV25-5025937-S (Conn. Super. Ct. filed Apr. 14, 2025; removed May 12, 2025); *Laureano v. CHCI*, KNL-CV25-5025935-S (Conn. Super. Ct. filed Apr. 14, 2025; removed May 12, 2025); *Hardy v. CHCI*, KNL-CV25-5025936-S (Conn. Super. Ct. filed Apr. 14, 2025; removed May 12, 2025); *Stiggle v. CHCI*, No. KNL-CV25-5025963-S (Conn. Super. Ct. served April 10, 2025; removed May 27, 2025).

exclusive.'" *See*, *e.g.*, Notice of Removal, *Frankfurter*, Ex. B, ECF 1-2 at 10-11 (reflecting Attorney General's state court appearance on February 25, 2025).

Although the Attorney General timely appeared in each action, it did not remove the actions as required under § 233(*l*)(1). As a result, and because the state actions were not consolidated, CHCI removed each separately, within 30 days of being served. *See*, *e.g.*, Notice of Removal, *Frankfurter*, No. 25-cv-344, ECF 1 at ¶15. As its grounds for removal in all fifteen actions, CHCI invoked officer removal statutes, 42 U.S.C. § 233(*l*) and 28 U.S.C. § 1442(a)(1), with CAFA, 28 U.S.C. § 1332(d), as an additional ground in eight of them.[5]

The plaintiffs moved to remand in only seven[6] of the fifteen actions: four motions were timely[7] and three were untimely.[8] As of today, the plaintiffs in the other eight cases did not move to remand.[9] If any of them (except Stiggle) were to file a motion, it would be untimely.

---

[5] CHCI also did not invoke CAFA in the five *pro se* actions—*Mims*, *Blount*, *Laureano*, *Hardy*, and *Stiggle*—because they were not brought as class actions, and did not to invoke CAFA in *Brown* and *Chomicz* because the putative class is limited to citizens of Connecticut.

[6] *See Frankfurter v. CHCI*, No. 3:25-cv-344 (D. Conn.), ECF No. 14-1 (*Frankfurter* Remand); *Ploss v. CHCI*, No. 3:25-cv-345 (D. Conn.), ECF No. 15-1 (*Ploss* Remand); *Tedone v. CHCI*, 3:25-cv-371 (D. Conn.), ECF No. 20-1 (*Tedone* Remand); *Brown v. CHCI*, 3:25-cv-372 (D. Conn.), ECF No. 16-1 (*Brown* Remand); *Rodriguez v. CHCI*, 3:25-cv-358 (D. Conn.), ECF No. 15-1 (*Rodriguez* Remand); *Flores Torres v. CHCI*, 3:25-cv-00490 (D. Conn), ECF No. 15 (*Flores Torres* Remand); *Horn v. CHCI*, 3:25-cv-00388 (D. Conn), ECF No. 24 (*Horn* Remand).

[7] *Frankfurter* Remand, *Ploss* Remand, *Rodriguez* Remand, and *Flores Torres* Remand.

[8] *Tedone* Remand (32 days after removal), *Brown* Remand (32 days after removal), and *Horn* Remand (58 days after removal).

[9] *Colino v. CHCI*, No. 3:25-cv-346 (removed on March 10, 2025); *Dallape v. CHCI*, No. 3:25-cv-511 (removed on March 31, 2025); *Chomicz v. CHCI*, No. 3:25-cv-586 (removed oni April 14, 2025); *Mims v. CHCI*, 3:25-cv-614 (removed April 17, 2025); *Blount v. CHCI*, No. 3:25-cv-769 (removed May 12, 2025); *Laureano v. CHCI*, No. 3:25-cv-770 (May 12, 2025); *Hardy v. CHCI*, 3:25-cv-771; *Stiggle v. CHCI*, No. 3:25-cv-835 (removed on May 27, 2025).

The United States, claiming to be a "non-party," filed a substantively identical "Notice of the United States Regarding Federal Subject Matter Jurisdiction" in each removed action. *See*, *e.g.*, *Frankfurter*, No. 25-cv-344, ECF No. 16 (U.S. "Notice").

Because the remand motions are all substantially similar, this opposition, unless otherwise specified, applies equally to each. For clarity and efficiency, CHCI's opposition refers primarily to the remand motion and United States notice filed in *Frankfurter*. No. 3:25-cv-344, ECF 14-1 (*Frankfurter* Remand).

## ARGUMENT

### I. ANY PROCEDURAL OBJECTION TO REMOVAL IS WAIVED IF NOT TIMELY RAISED BY A PARTY

Because statutory removal procedures are "modal . . . not jurisdictional" and exist for the protection of the parties, any procedural defect or objection to removal is waived if not made by a party in a "*motion to remand* . . . within 30 days" of removal. *Agyin*, 986 F.3d at 182–83 (citing 28 U.S.C. § 1447(c)); *see also Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 50 n.2 (2d Cir. 2000) (concluding objection to removal waived unless raised within 30 days because it challenges an error "other than lack of subject matter jurisdiction") (citing 28 U.S.C. § 1447(c)); *Hamilton v. Aetna Life and Cas. Co.*, 5 F.3d 642, 643 (2d Cir. 1993) (per curiam) (explaining "all motions for remand [under § 1447(c)]—except those based on lack of subject matter jurisdiction—must be made within 30 days after removal or they are waived"); *see also Farina v. Nokia Inc.*, 625 F.3d 97, 114 (3d Cir. 2010) ("It is well settled that § 1446(b)'s thirty-day time limit for removal is a procedural provision, not a jurisdictional one.").

Here, the plaintiffs in eleven of the fifteen actions waived any procedural objection to removal, either by asserting untimely objections[10] or by making no objection at all.[11] Accordingly, even if the removals were procedurally defective (they were not), those plaintiffs waived any objection. That the United States, as a "non-party," filed "notices" in each action within 30 days of removal is of no consequence. The Government chose *not* to file a "timely motion" to intervene under Fed. R. Civ. P. 24, and is resisting, not seeking, intervention here. *See* U.S. Notice, *Frankfurter*, No. 25-344, ECF No. 16 at 4 ("[T]he United States further advised [the state court that] it would not be intervening and substituting itself for CHC," claiming the action did not arise out of covered conduct); *cf.* U.S. Mot. to Intervene at 1 n.1, *United States v. Fenway Cmty. Health Ctr., Inc.*, No. 1:23-cv-12361, Dkt. No. 27 (D. Mass. May 13, 2024) (recognizing, in case against deemed health center, "[i]ntervention is the '*requisite method for a nonparty,' like the United States* . . . 'to become a party to the lawsuit'" and move *for any relief*) (emphasis added).

The language and structure of § 1447(c)—which differentiates between the parties and the court—makes clear that only parties may raise procedural objections, through a timely "motion to remand," under 28 U.S.C. § 1447(c). "The first sentence of § 1447(c) 'consigns procedural formalities to the care of the parties,'" whereas "[t]he second sentence 'assigns to the court concern for its jurisdictional prerequisites.'" *Kelton Arms Condo. Owners Ass'n v. Homestead Ins. Co.*,

[10] *Tedone v. CHCI*, No. 3:25-cv-371 (32 days after removal); *Brown v. CHCI*, No. 3:25-cv-372-MPS (32 days after removal); *Horn v. CHCI*, No. 3:25-cv-388-MPS (Dkt. No. 24) (58 days after removal).

[11] *Colino v. CHCI*, No. 3:25-cv-346 (removed on March 10, 2025); *Dallape v. CHCI*, No. 3:25-cv-511 (removed on March 31, 2025); *Chomicz v. CHCI*, No. 3:25-cv-586 (removed on April 14, 2025); *Mims v. CHCI*, 3:25-cv-614 (removed April 17, 2025); *Blount v. CHCI*, No. 3:25-cv-769 (removed May 12, 2025); *Laureano v. CHCI*, No. 3:25-cv-770 (May 12, 2025); *Hardy v. CHCI*, 3:25-cv-771; *Stiggle v. CHCI*, No. 3:25-cv-835 (removed on May 27, 2025).

346 F.3d 1190, 1192 (9th Cir. 2003); *see also Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir. 1995) ("The inclusion of the term motion with respect to procedural defects . . . implies that a court must wait for a 'motion' by a party before it is authorized by § 1447(c) to remand.").

In short, the plaintiffs in eleven of the fifteen removed actions "ha[ve] acquiesced in federal jurisdiction." *In re Allstate Ins.*, 8 F.3d 219, 223 (5th Cir. 1993). Where "it hardly will do for the court *sua sponte* to interfere with the parties' apparent choice of forum," *id.*, "non-party" United States should not be permitted to claim for itself authority that § 1447(c) reserves for parties, to the exclusion of the court, to insulate its self-interested actions from judicial review.

## II. CHCI PROPERLY REMOVED THIS ACTION PURSUANT TO § 233(*L*)(2)

### A. The Secretary irrevocably deemed CHCI to be a PHS employee for the relevant period

Both provisions of § 233(*l*) facilitate removal and judicial review for the benefit and protection of deemed PHS defendants. First, § 233(*l*)(1) obligates the Attorney General to advise the state court of the Secretary's "ex-ante" conferral of deemed status within fifteen days of notice, and, on that timely report, to mandate removal, regardless of the Attorney General's separate, "ex-post" coverage decision. *Id*. at 1129 ("§ 233(*l*)(1) obligates the Attorney General to report on the Secretary's deeming decision, not to report the Attorney General's ultimate coverage decision."). If the Attorney General "fails" to perform this mandatory duty—*i.e.*, to remove—a deemed health center defendant is entitled to remove the action itself. 42 U.S.C. § 233(*l*)(2). Once removed, the district court has a duty to conduct a "hearing" and make a threshold immunity "determination." 42 U.S.C. § 233(c), (*l*)(2) (mandating "hearing" and judicial determination as to whether § 233(a)

covers the action and makes plaintiff's exclusive remedy a claim against the United States under the FTCA); *Blumberger*, 115 F.4th at 1134–35.[12]

Although the PHS Act (as amended) is "pretty complicated," the "key to unlocking" the meaning of § 233(*l*) is in understanding the distinction Congress drew between the "different determinations made by different department heads." *Blumberger*, 115 F.4th at 1116, 1127–29. Section 233 provides the Secretary, who has "expertise in administering healthcare policies and services," exclusive authority to designate health centers and their personnel as federal employees for purposes of § 233(a) immunity. *Id.* at 1128. To carry out that responsibility, the Secretary must "prescribe" an "application," § 233(g)(1)(D), to ensure, among other things, that each health center "has implemented appropriate policies and procedures to reduce the risk of malpractice *and the risk of lawsuits arising out of any health or health related functions* performed by the entity." *Id.* § 233(h)(1) (emphasis added). The Secretary's approval of that application—its ex-ante deeming determination—prospectively applies to a specified calendar year and affords the health center applicant (and its personnel) a federal-employee status that is "final and binding" on the Attorney General in any subsequent litigation. *Id.* § 233(g)(1)(F). In contrast, the Attorney General, with expertise in representing the interests of the United States and defending the public, is tasked with making a "litigation-specific" coverage decision and defending individuals or entities covered by § 233(a). § 233(b), (c); *Blumberger*, 115 F.4th at 1128–29.

[12] Plaintiffs concede that § 233(*l*)(2) affords deemed defendants a removal "right" and authorizes substitution of the United States when appropriate, *Frankfurter* Remand at 1 ("allowing the district court to resolve the scope-of-employment question"), but insists that removal and judicial review is "only" available at the Attorney General's choosing—*i.e.*, if the Attorney, *after being* notified of the action, chooses not to appear. *Id.* at 7-8 (asserting "U.S. Attorney's dispositive determination . . . forecloses Defendant's entitlement to immunity" and insisting that "nothing in § 233(*l*)(2) allows Defendant to remove anyway to obtain review of the Attorney General's scope determination").

Given the Act's clear "division of labor," it makes sense for the Secretary's deeming determination—the only determination referenced in § 233(*l*)(1)—to confer *federal jurisdiction* and obligate the Attorney General to remove the action. *Id*. at 1128. "[I]t is an employee's deemed status," determined by the Secretary under § 233(g) and (h), "not *covered* status," determined by the Attorney General (or delegee) under § 233(c), "that triggers the removal provisions of § 233(*l*)(1)." *Id*. at 1134 (emphasis added). Thus, "[a]ny advice the Attorney General may give to the state court about its ultimate coverage decision *has no legal consequence,* one way or another, under § 233(*l*)(1)." *Id*. (emphasis added). The Attorney General's ex-post coverage determination, in other words, can neither retroactively strip a health center's deemed federal status nor deprive the district court of its jurisdiction over the immunity defense.[13]

### B. 42 U.S.C. § 233(*l*)(1) obligates the Attorney General to remove actions on behalf of deemed defendants

In their remand motions, Plaintiffs argue that the Attorney General, by timely reporting its coverage determination (not the HHS Secretary's deeming determination), effectively precluded CHCI from removing under § 233(*l*)(2). *Frankfurter* Remand at 1, 7–8; U.S. Notice, *Frankfurter*, No. 25-344, ECF No. 16 at 6). That argument undoes the purpose of § 233(*l*)—which was added to a pre-existing and generous "any time before trial" removal scheme for the benefit and protection of deemed PHS employees.[14]

[13] The *Blumberger* decision illustrates that § 233(*l*)(2)'s timing clause is not jurisdictional. That is, *Blumberger* Court vacated a remand order based on the government's misadvice under § 233(*l*)(1)—without having to determine if § 233(*l*)(2) was available to the deemed defendant. *Blumberger*, 115 F.4th at 1134 ("[I]t is an employee's deemed status … that *triggers the removal provisions of* § 233(*l*).") (emphasis added).

[14] The removal provision, among others, was enacted to remedy the Attorney General's historic failure to act on behalf of deemed defendants. *See* Federally Supported Health Centers Assistance

Under § 233(*l*)(1), the Attorney General was obligated to advise the state court of CHCI's *positive* deemed status and, in turn, to remove the action *on its behalf*. § 233(*l*)(1); *Blumberger*, 115 F.4th at 1139. There is no dispute that the HHS Secretary had deemed CHCI for the period in which the events (*i.e.*, acts or omissions) giving rise to this action occurred. Notice of Deeming, *Frankfurter*, ECF No. 1 at ¶ 2 (citing government's web-based platform confirming CHCI's continuous deemed status since as early as 2010); 42 U.S.C. § 233(g)(1)(F). It is that ex-ante determination of the Secretary, which is "final and binding" on the Attorney General, that "triggers the removal provisions of § 233(*l*)(1)." *Blumberger*, 115 F.4th at 1134.

Even though the Attorney General reported the Secretary's deeming of CHCI for the relevant period—*i.e.*, the only advice § 233(*l*)(1) calls for—the Attorney General failed to remove the action on its behalf. Instead, the Attorney General reported its *coverage* determination that the action "does not arise out of any conduct by [CHCI] for which § 233(a) makes the remedy against the United States exclusive." Notice of Deeming, *Frankfurter*, ECF No. 1, Ex. B at 10–11 (U.S. state court appearance).

The Attorney General, consistent with its advice to the state court of the *Secretary*'s *favorable deeming decision*, as required by § 233(*l*)(1), should have removed the case to federal court on behalf of CHCI to allow for judicial review of the Attorney General's separate (and disputed) coverage decision. *Blumberger*, 115 F.4th at 1135. If anything, CHCI—by removing the action—merely did what the Attorney General should have, but failed, to do. Indeed, § 233(*l*)(2)

---

Act (FSHCAA) of 1995, Pub. L. No. 104-73, 109 Stat. 777, § 6 (adding removal provisions which cross-reference, and incorporate preexisting removal provision under § 233(c)). *See also* H.R. Rep. No. 104-398, at 7, 12 ("The Committee is concerned about the length of time that it has taken for malpractice claims to be processed . . . [D]elays in the appearance by DOJ in State or local court . . . ha[ve] resulted in at least one default judgment against a health center involving a claim that later was determined to be covered under the FTCA.").

"contemplates," and provides a failsafe for, that very situation. *Id*. at 1119 ("If the Attorney General *fails* to appear" for the single purpose identified in § 233(*l*)(1), the case "shall be removed to federal court . . .") (citing § 233(*l*)(2) (emphasis added); *accord Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("§ 233(*l*)(1) itself says that *compliance with its terms* also serves to 'satisfy the provisions of subsection (c).'") (emphasis added).[15]

### C. Section 233(*l*)(2) affords a removal right without a time limit

CHCI's § 233(*l*)(2) removal is timely. Where, as here, the Attorney General "fails" to appear, advise, and effectuate § 233(*l*)(1)'s singular purpose (*i.e.*, removal), the deemed defendant has a broad right to remove under 42 U.S.C. § 233(*l*)(2). Consistent with the important federal interests PHS Act immunity serves, the Act imposes no temporal limitation on § 233(*l*)(1) and (2) other than 233(c)'s "any time before trial," which § 233(*l*)(1) expressly incorporates by reference.

[15] Plaintiffs and the government reliance on *Doe v. Centerville Clinics Inc.*, No. 23-2738, 2024 WL 3666164 (3d Cir. Aug. 6, 2023), *cert. denied*, No. 24-727 (March 24, 2025) is misplaced. That unpublished and unpersuasive decision is outright rejected by *Blumberger*, 115 F.4th at 1128–29, which explains that "*Doe v. Centerville Clinics, Inc*. . . . illustrates the dangers of eliding th[e] distinction" between deeming and coverage determinations." The dangers include at least two foreseeable and highly disfavored consequences. First, the coverage determination is committed to the unreviewable judgment of the Attorney General, *id.*; *see also id*. at 1137-38 (rejecting notion "judicial review remains available to [the deemed defendant] in state court or an APA action"). Second, Article III judges are reduced to "petty functionaries . . . required to rubber-stamp the decision of a scarcely disinterested executive officer, but stripped of capacity to evaluate independently whether that decision is correct." *De Martinez*, 515 U.S. at 426. Such a "strange course becomes all the more surreal when [as here] one adds to the scene the absence of an obligation on the part of the Attorney General's delegate to conduct a fair proceeding, indeed, any proceeding." *Id*. at 429 (rejecting outcome in which "courts could do no more, and no less, than convert the executive's scarcely disinterested decision into a court judgment").

42 U.S.C. § 233(*l*)(1). Although not required by the PHS Act to remove these actions within thirty days of service, CHCI did so to avoid any timeliness objection to its § 1442(a)(1) removal.[16]

A fundamentally mistaken premise of Plaintiffs' and the Government's timeliness argument—which *Blumberger* rejects—is that § 233(*l*)'s 15-day window inures to the benefit of the Attorney General. *Frankfurter* Remand at 2 ("[A]n entity gets immunity *only if* the Attorney General finds it acted within the scope of employment, precisely because the federal government bears responsibility for defending covered cases.") (emphasis added); U.S. Notice, *Frankfurter*, No. 25-344, ECF No. 16 at 6. Through that lens, Plaintiffs (and the United States) misperceive CHCI's removal as defeating the purpose—or depriving the Attorney General of the benefit—of a timely appearance. The "benefit" the United States seeks (through a state court appearance) is the ability to preclude removal and review of its coverage decision, a contention that one federal appeals court has previously rejected. *See e.g.,* United States's Pet. for Reh'g En Banc, *Blumberger v. Tilley*, No. 22-56032, Dkt. No. 82 at 2, 16 (9th Cir., filed Nov. 25, 2024) ("If Congress intended to grant defendants broad removal rights to seek federal court review of coverage determinations, it would have said so.") (quoting *Blumberger*, 115 F.4th at 1147 (Desai, J, dissenting in part)).

The Ninth Circuit squarely rejected the notion that § 233(*l*) authorizes the Attorney General to preclude removal. *Blumberger*, 115 F.4th at 1137 ("[I]f one thing about § 233 is plain, it is that Congress did not plainly commit this [scope of employment] inquiry to the unreviewable judgment of the Attorney General"). Instead, the Attorney General's two-part obligation under § 233(*l*)(1)—

[16] In *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76 (2d Cir. 2005), the government conceded that when the Attorney General does not appear and advise the state court of the Secretary's ex ante deeming determination, as contemplated by 42 U.S.C. § 233(*l*)(1), the deemed defendants "being sued" may "remove the case themselves, *without any statutory time limit*," for a hearing "to determine the proper forum for the case." *Celestine v. U.S.*, No. 04-0839, 2004 WL 3767822, *15–16 (C.A.2 (Appellate Brief) (citing § 233(*l*)(2)) (emphasis added).

to appear and advise—fulfills a single purpose, *i.e.*, removal on behalf of the deemed defendant, regardless of the Attorney General's ability to make a coverage determination in that timeframe. *Blumberger*, 115 F.4th at 1134 (recognizing § 233(*l*)(1) is not designed to afford the Attorney General an opportunity to make a coverage decision prior to removal).

The existence of federal jurisdiction to adjudicate CHCI's claimed immunity defense does not diminish Plaintiffs' (or the Government's) ability to dispute that defense on its merits. *Blumberger*, 115 F.4th at 1135, 1140 ("Once the case has been removed, the district court may conduct a hearing on a motion to remand filed by any party.") *Id*. (noting Attorney General "is free to contest" a deemed defendant's claimed immunity in a "hearing") (citing § 233(c)).

## III. CHCI PROPERLY REMOVED THIS CASE PURSUANT TO 28 U.S.C. § 1442(A)(1)

As a deemed PHS employee with absolute federal immunity, CHCI also properly removed this action under 28 U.S.C. § 1442(a)(1), which affords a right of removal to "any officer . . . of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). A private entity acts under a federal officer when it acts on the officer's behalf under delegated authority, or "assist[s]" or "help[s] carry out" the official "duties or tasks of the federal superior." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 152 (2007) (emphasis omitted). The statute, and in particular the words "acting under," are broadly construed. *Colorado v. Symes*, 286 U.S. 510, 517 (1932). The "test for removal," in other words, "should be broader, not narrower, than the test for official immunity" itself. *Willingham*, 395 U.S. at 405.

Under binding Second Circuit precedent, CHCI, as a deemed PHS employee asserting § 233(a) immunity, is a person "acting under [a federal] officer" and raises a colorable federal

defense. *See Agyin*, 986 F.3d at 174–75; *see also Kelley v. Richford Health Ctr., Inc.*, 115 F.4th 132, 138 (2d Cir. 2024) (finding a "'colorable claim for removal under § 1442' is all it takes to trigger [appellate] review of a remand order, even if we ultimately determine that removal was improper") (citing *Agyin*, 986 F.3d at 174); *Blumberger*, 115 F.4th at 1123; *Friedenberg*, 68 F.4th at 1124. In *Agyin*, the Second Circuit endorsed the propriety of a deemed PHS employee's removal under § 1442(a)(1) where, as here, the defendant claimed § 233(a) immunity as a federal defense. *See Agyin*, 986 F.3d at 174. Faithful to the Supreme Court's instruction that federal officer removals "be liberally construed," and that the court must "credit [the d]efendants' theory of the case" in assessing its jurisdiction, *Agyin* held that a deemed PHS defendant acts under federal officers and raises a colorable federal defense in asserting § 233(a) immunity. *Id.* at 174–75 (citing *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 432 (1999)); *see id*. at 185, 187 (ordering United States' substitution over its objection).

When CHCI provided medical and related services to Plaintiffs (thereby collecting, generating, and needing to protect the confidential information at issue), it was acting under a federal officer. As was true in *Agyin*, here, CHCI received federal funding under 42 U.S.C. § 254b to provide medical care to a federally designated population; was a deemed federal employee; and operated subject to the same extensive federal requirements analyzed in *Agyin*. *Id*. at 172, 177–78. Examining FSHCAA's legislative history, the *Agyin* Court determined that deemed PHS employees perform "a job that—in the absence of [FSHCAA] and its provision for deeming health

centers and their staffs to be federal employees—the federal government would have had to perform itself," *i.e.*, "provid[ing] medical care to the indigent." *Id.*[17]

The Plaintiffs' repeated reference to CHCI as a "hospital" reveals its failure to meaningfully engage with the governing statute. *Frankfurter* Remand at 1, 2, 16 ("Nothing cited in the statute, however, required the hospital to provide certain minimum levels of data security—so the challenged conduct here falls well outside anything directed by federal regulations."). CHCI is not a hospital that "gets a grant from the federal government." *Id*. at 2. It is a "federally supported" health center "occup[ying] a unique place in the health services ecology." *Cmty. Health Care Ass'n of N.Y. v. Shah*, 770 F.3d 129, 157 (2d Cir. 2014). The statute that establishes its eligibility for federal status requires that CHCI maintain "the confidentiality of patient records." 42 U.S.C. § 254b(3)(A), § 233(g)(4) (premising eligibility on receipt of § 254b funding); *see also* 42 C.F.R. § 51c.110 ("All information as to personal facts and circumstances obtained by the project staff about recipients of services shall be held confidential, and shall not be divulged without the individual's consent. . . ."); 42 C.F.R. § 51c.303 ("A community health center supported under this subpart must . . . [i]mplement a system for maintaining the confidentiality of patient records in accordance with the requirements of § 51c.110 of subpart A.").

---

[17] Indeed, prior to 1983, the federal government—through PHS employees—performed the same work CCM now performs. When considering FSHCAA, Congress noted that, historically, more than one-half of health center staff were in the National Health Service Corps ("NHSC") program. H.R. Rep. 102-823(I), at 5 (1992). Thus, until 1983, most health center staff were federal employees. See id. ("all NHSC assignees were members of the [PHS] until 1983"); HRSA, NHSC, NHSC Timeline, https://nhsc.hrsa.gov/about-us/timeline (after 1983, "NHSC members are no longer federal employees."). Part of Congress's motivation for FSHCAA was to address increased costs incurred during the nine-year period when the majority of health center staff were not PHS employees. *See id.*

As to whether CHCI has raised a colorable federal defense, there are several decisions—including ones cited by Plaintiffs and the United States—illustrating federal courts doing precisely what they insist this one cannot do: exercise § 233(*l*) or § 1442 jurisdiction to adjudicate a deemed health center's claim to § 233(a) immunity from data-breach class actions. *See*, e.g., *Krandle v. Refuah Health Ctr.*, *Inc*., No. 22-cv-4977, 2024 WL 1075359, at *3, *9–10 (S.D.N.Y. Mar. 12, 2024) on appeal, No. 25-766 (filed Mar. 31, 2025) (holding, in putative data-breach class actions, "[deemed health center defendant]'s alleged duty to safeguard PII and PHI is a 'medical . . . or related function'" within the meaning of § 233(a) immunity) (citing *Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4907, 2023 WL 2662811, at *4–8, 11 (S.D.N.Y. Mar. 28, 2023) (denying remand motion and finding jurisdiction under 28 U.S.C. § 1442(a)(1)); *Engles v. ARcare, Inc.*, No. 22-cv-117-BSM (E.D. Ark.), ECF No. 55, 56 (orders denying remand, exercising jurisdiction under § 233(*l*)(2), and otherwise consolidating *Engles* "into *Hale v. ARcare*, 3:22-cv-117-BSM"); *Hale v. ARcare, Inc.*, No., 3:22-CV-00117-BSM, 2024 WL 1016361, at *1 (E.D. Ark. Mar. 8, 2024) (denying ARcare's claimed § 233(a) immunity from putative class action arising out of data-breach incident), *appeal filed*, No. 24-1726 (8th Cir. Apr. 8, 2024); *Ford v. Sandhills Med. Found., Inc.*, No. 21-cv-02307, 2022 WL 1810614, at *3 n.5 (D.S.C. June 2, 2022) (Harwell, C. J.) (exercising jurisdiction under § 233(*l*)(2) and § 1442(a)(1) to hold that § 233(a) immunity covers data-breach class action against deemed health center), *rev'd in part*, *Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252 (4th Cir. 2024), *cert. pet. denied*, No. 24-483 (March 3, 2025).

The existence of decisions—which come out both ways on the ultimate entitlement to immunity—aligns with a fundamental principle of officer removals: the validity of the federal defense "is a distinct subject . . . involv[ing] wholly different inquiries . . . . [with] no connection

whatever with the question of jurisdiction." *Mesa v. California*, 489 U.S. 121, 129 (1989) (quoting *The Mayor v. Cooper*, 6 Wall. 247, 254 (1868)).

Neither Plaintiffs nor the United States mention, much less confront, the *Krandle* decision, even though it applies *Agyin* in a virtually identical context: a deemed health center's § 1442(a)(1) removal of two data-breach class actions, asserting § 233(a) immunity. *Krandle*, 2023 WL 2662811, at *11. In *Krandle*, the District Court for the Southern District of New York concluded that the deemed health center, facing putative data-breach class actions, was tasked "to 'carry out the duties of the federal government to provide medical care to the indigent,' [] must keep patient records safe as required by federal statute, arguably qualifying [deemed health center's] actions as 'acting under' color of federal regulations" for purposes of 28 U.S.C. 1442(a)(1))." *Id.* at *11 (citing *Agyin*, 986 F.3d at 176 and 42 U.S.C. § 254b(3)(A), requiring health centers maintain "the confidentiality of patient records"). Thereafter, exercising removal jurisdiction under § 1442(a)(1), the court held that a deemed health center defendant's alleged duty to safeguard patient data is a "medical . . . or related function," and ordered the United States's substitution in its place. *See Krandle*, 2024 WL 1075359, on appeal, No. 25-766 (filed Mar. 31, 2025).

The decisions illustrate, rather than refute, why this Court should exercise its "virtually unflagging obligation" to reach its own conclusion as to whether § 233(a) immunity applies. *See Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976); *see also Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (Marshall, C.J.) ("We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.").

## IV. CHCI PROPERLY INVOKED THE COURT'S CAFA JURISDICTION

The Court has original subject matter jurisdiction over class actions (1) with 100 or more class members; (2) a matter in controversy, in the aggregate, that exceeds the sum or value of $5

million, exclusive of interests and costs; and (3) "minimal diversity," *i.e.*, at least one plaintiff (including putative class members) that is a citizen of a state different than the defendant. *See* 28 U.S.C. § 1332(d); *Davenport v. Lockwood, Andrews & Newnam, Inc.*, 854 F.3d 905, 907 (6th Cir. 2017). Notwithstanding all CAFA jurisdictional requirements being met, the district court can decline jurisdiction under three provisions: (1) the home state exception, § 1332(d)(4)(B); (2) the local controversy exception, § 1332(d)(4)(A); and (3) the discretionary exception, § 1332(d)(3).

Plaintiffs do not dispute that CAFA jurisdictional requirements are met here. Instead, Plaintiffs raise all three exceptions to CAFA jurisdiction.[18] Under any of these exceptions, "[i]t is a well-established rule that the party seeking remand bears the burden of proving the applicability of an exception" to CAFA. *Brook v. UnitedHealth Grp. Inc.,* No. 06 CV 12954 (GBD), 2007 WL 2827808, at *3 (S.D.N.Y. Sept. 27, 2007). Further, the party seeking to remand under an exception to CAFA bears the burden of establishing each element of the exception by a preponderance of the evidence. *Gaska v. DARCARS of R.R. Ave., Inc.,* 673 F. Supp. 3d 157, 164 (D. Conn. 2023) (quotation omitted). Unlike other removal context, "no antiremoval presumption attends cases invoking CAFA." *See Dart Cherokee*, 574 U.S. at 89.

### A. The Home State Exception Does Not Apply

Under the home state exception, the party seeking to invoke it bears the burden of proof on whether two-thirds or more of the members of the proposed class and the primary defendant are citizens of the original filing state. 28 U.S.C. § 1332(d)(4)(B).

---

[18] *See Frankfurter* Remand at 17-21 (raising home state and local controversy exceptions); *Ploss* Remand at 17-21 (same); *Tedone* Remand at 17-21 (same); *Brown* Remand at 17-21 (same, even though *Brown* was not removed under CAFA because the putative class is explicitly limited to citizens of Connecticut); *Rodriguez* Remand at 18-21 (same); *Flores Torres* Remand at 15-18 (raising home state and discretionary jurisdiction exceptions); *Horn* Remand at 13-18 (same).

Plaintiffs have not met their burden under this exception. At the outset, CHCI acknowledges it is the primary (and only) defendant, and CHCI is a citizen of Connecticut, the original filing state. Whether the home state exception applies in this case thus turns on the citizenship of putative class members. Based on the addresses to which notice was sent, Plaintiffs contend that two-thirds of the putative class, patients whose information may have been impacted by the incident, are citizens of Connecticut. *Frankfurter* Remand at 18. But, "medical records alone cannot form an adequate basis for the district court to make a credible estimate that two-thirds of the proposed class were citizens of [the state to which notice was sent]." *Stewart v. Ruston Louisiana Hosp. Co., LLC*, No. 3:14–0083, 2014 WL 4678606, at *6 (W.D. La. Sept. 19, 2014); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 793, 799 (5th Cir. 2007) (refusing to "presume…the patients' primary billing addresses listed in the medical records accurately reflect their domicile" for CAFA jurisdiction); *accord Albury v. Daymar Colleges Grp., LLC*, No. 3:11-CV-573, 2012 WL 524480, at *4 (W.D. Ky. Feb. 15, 2012) ("It has repeatedly been held that a party's residence in a state alone does not establish domicile.") (cleaned up).

For example, in *Bland v. Urology of Greater Atlanta, LLC*, No. 1:23-cv-132-MLB, 2024 WL 3313348 (N.D. Ga. Mar. 14, 2024), the court rejected plaintiff's argument—the same argument brought by Plaintiffs here—that "'the addresses to which notice letters were mailed' can establish the citizenship of class members in a data breach case." *Id.* at *2. In doing so, the court noted the significant difference between residence and citizenship: "[W]hile a person's mailing address might establish his or her 'residence,' it says nothing about his or her 'intention to remain there indefinitely'" as is required to establish citizenship. *Id.* Likewise, here, the mailing addresses to which CHCI mailed notice letters do not establish citizenship (i.e., domicile). And Plaintiffs

cannot point to any other evidence to prove citizenship or upon which a reasonable inference of citizenship can be made.[19]

The cases cited to by Plaintiffs are inapposite. *Frankfurter* Remand at 18-19. For instance, in *Int'l House v. Consolidated Edison Co. of N.Y.*, 2023 WL 2898623 (S.D.N.Y. Apr. 11, 2023), the defendant only serviced properties in New York and the parties were unable to identify any putative class members who were not New York citizens. *Id.* at *4. By contrast, here *Plaintiffs concede* that the putative class contains non-Connecticut citizens. *Frankfurter* Remand at 18, 20. In *Gaska,* which analyzed whether either the local controversy or discretionary exception applied, the parties *agreed* that addresses equated to citizenship—whereas here CHCI *disputes* that addresses can be used to determine citizenship. 673 F. Supp. at 166-67. And in *Adams v. West Marine Prods., Inc.*, 958 F.3d 1216 (9th Cir. 2020), the plaintiff proffered evidence demonstrating that more than 90% of the putative class members in a wage and hour class action had a last known address in California *along with* a sworn declaration that she was required by defendant to certify her California citizenship and she was required by defendant to ask applicants whether they were California citizens. *Id.* at 1222. The court found this cumulative evidence to be sufficient to demonstrate citizenship. *Id.* Yet here, Plaintiffs only proffered evidence are the purported addresses of putative class members.

**B. Plaintiffs Have Also Failed to Satisfy Their Burden that the Local Controversy Exception Is Applicable**

[19] Plaintiff Flores Torres also references websites indicating that CHCI "describes itself as a Connecticut healthcare provider" to support her argument that more than two-thirds of those individuals impacted by the data breach are Connecticut citizens. *Flores Torres* Remand at 16. Likewise, Plaintiff Horn cites to CHCI's Connecticut locations, and references to CHCI's service of Connecticut residents. *Horn* Remand at 15. Yet these website references (which are not actual evidence of putative class members' citizenship) still conflate *residence* with *citizenship* and are insufficient to meet Plaintiffs' burden under the exception.

Similar to the home state exception, under the local controversy exception, the party seeking to invoke it bears the burden of proving that (1) greater than two-thirds of the members of the proposed class are citizens in the state in which the action was originally filed; (2) at least one defendant from whom significant relief is sought and whose conduct forms a significant basis of the claims is a citizen of the state in which the action was originally filed; (3) the principal injuries resulting from the alleged conduct of each defendant were incurred in the state in which the action was originally filed; and (4) during a three year period preceding the filing of the suit, no other class action has been filed asserting the same or similar facts against the defendants on behalf of the same persons. 28 U.S.C. § 1332(d)(4)(A). In the alternative, plaintiffs must show that two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants are citizens of the State in which the action was originally filed. 28 U.S.C. § 1332(d)(4)(B).

As discussed above, Plaintiffs have not met their burden to show that more than two-thirds of the putative class are citizens of Connecticut. The local controversy exception is inapplicable for another reason as well. Under the third provision of the exception, plaintiffs must show that, "during the three years preceding the filing of the class action, no other class action was filed asserting the same or similar allegations against any of the defendants." *Fulgenzi v. Smith*, No. 1:12-CV-1261 RB/RHS, 2014 WL 11497836, at *5 (D.N.M. Nov. 13, 2014). "CAFA does not define what constitutes an 'other class action' other than to limit it to filed cases asserting similar factual allegations against a defendant. The goals of the statute, however, provide guidance. In enacting CAFA, Congress recognized the benefits of having one federal forum to adjudicate multiple cases filed in various courts against a defendant." *Martinez v. Darden Restaurants, Inc.*, No. CV 15-3434-GW(GJSX), 2015 WL 4480658, at *1 (C.D. Cal. July 22, 2015) (internal

quotation omitted). In other words, "Congress wanted to ensure that defendants did not face copycat, or near copycat, suits in multiple forums and hence excluded from the local controversy exception cases where a defendant was named in multiple similar cases." *McCracken v. Verisma Sys., Inc.*, No. 6:14-CV-06248(MAT), 2017 WL 2080279, at *5 (W.D.N.Y. May 15, 2017).

This is precisely CHCI's situation. As the Court is aware, the first action arising from the incident was filed in federal court and has since been consolidated with six other putative class actions that were filed in the District. *See Donahue v. Community Health Center, Inc.*, No. 3:25-cv-176-MPS (D. Conn.). Because there is no dispute that the *Donahue* action was filed within three years of these cases, involves the same factual allegations as those at issue in these cases, and are filed against the same defendant. Accordingly, the local controversy exception is inapplicable.

### C. The Discretionary Exception Does Not Apply

Lastly, Plaintiffs ask the Court to remand based on the discretionary exception to CAFA, which is often referred to as the "interests of justice" exception. *See* 28 U.S.C. § 1332(d)(3). This exception provides the district court with the discretion to decline jurisdiction "over a class action in which greater than one-third but less than two-thirds of the members of the proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." *Id.* For the same reason the Plaintiffs have not met their burden to show that greater than two-thirds of the putative class are citizens of Connecticut without specific evidence of citizenship, they have not met their burden to show that greater than one-third of the putative class are Connecticut citizens.[20] CAFA favors—and indeed provides a mechanism for—

[20] Likewise, the first-filed *Donahue* action precludes applicability of this exception. *See* § 1332(d)(3)(F).

such cases being heard by the federal district courts. *See Dart Cherokee*, 574 U.S. at 89 ("CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'") (citation omitted). Thus, Plaintiffs have failed to show that the discretionary exception applies.

### D. Plaintiffs' Request for Jurisdictional Discovery Should be Denied

Lastly, Plaintiffs seek, in the alternative, jurisdictional discovery. This perfunctory request should be denied. First, Plaintiffs fail to specify the discovery that they seek. *Elasali v. Sun Diego*, No. 07-cv-02272-W-JMA, 2008 WL 11336731, at *2 (S.D. Cal. July 3, 2008) ("The Court also denies Plaintiff's request for jurisdictional discovery because Plaintiff does not specify what type of information he needs from Defendant in order to establish that diversity jurisdiction exists."). Second, Plaintiffs fail to provide any detail regarding how they would discern putative class members intent to stay at a specific mailing address, and even if they did, this type of discovery on over a million individuals would be expensive and burdensome. *See Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 692 (9th Cir. 2006) (holding the district court did not err in declining a request for jurisdictional discovery, explaining in the context of CAFA that "any decision regarding jurisdictional discovery is a discretionary one, and is governed by existing principles regarding post-removal jurisdictional discovery, including the disinclination to entertain 'substantial, burdensome discovery on jurisdictional issues.' "); *Butcher's Union Loc. No. 498, United Food & Com. Workers v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (holding a party's stated belief that discovery would yield facts supporting jurisdiction was insufficient and speculative in the context of personal jurisdiction).

## CONCLUSION

For the foregoing reasons and those previously stated in CHCI's notices of removal, the Court should deny the motions to remand by Plaintiffs and direct the parties to propose a briefing schedule for the "hearing" and determination under 42 U.S.C. § 233(c) and (*l*)—as to whether the Plaintiffs' exclusive remedy is a claim against the United States under the Federal Tort Claims Act.

Dated: June 13, 2025

Respectfully submitted,

COMMUNITY HEALTH CENTER, INC.

s/ *Philip H. Bieler*
Philip H. Bieler (ct16252)
Baker Hostetler LLP
45 Rockefeller Plaza 14th Floor
New York, New York 10111
Tel.: (212) 847-2868
Fax: (212) 589-4201
pbieler@bakerlaw.com

s/ *Matthew S. Freedus*
Matthew S. Freedus (DC Bar No. 475887)*
Powers Pyles Sutter & Verville PC
1250 Connecticut Ave, NW, 8th Floor
Washington, DC 20036
Tel: 202.466.6550
matthew.freedus@powerslaw.com

**Pro hac vice application will be filed shortly*

*Attorneys for Defendant Community Health Center, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System:

Chloe Mangan
Diserio Martin O'Connor &
Castiglioni LLP
1010 Washington Boulevard
Stamford, CT 06901
Tel.: 203.358.0800
cmangan@dmoc.com

Scott S. Centrella
Diserio Martin O'Connor &
Castiglioni LLP
1010 Washington Boulevard
Suite 800
Stamford, CT 06901
Tel.: 203.358.0800
scentrella@dmoc.com

Christopher Mims
264 Bilton Road
Somers, CT 06071

Marc H. Silverman
Acting United States Attorney
John W. Larson
Assistant United States Attorney
United States Attorney's
Office, District of Connecticut
450 Main Street, Rm. 328
Hartford, CT 06103
Tel.: 860-947-1101
John.larson@usdoj.gov

s/ *Philip H. Bieler*
Philip H. Bieler